Andrew Bailey (WSB # 7-6112)
Bailey|Stock|Harmon|Cottam|Lopez LLP
6234 Yellowstone Road
Cheyenne WY 82009
T: (307) 7638-7745
Andy@Performance-Law.com

Jeff Katofsky, Esq. (CA SBN # 138773, pro hac vice pending)
KATOFSKY LAW
4558 Sherman Oaks Ave.
Sherman Oaks, CA 91403
T: 818-990-1475
jeff@katofskylaw.com

Attorneys for Plaintiff,
AXIS CAPITOL MANAGEMENT INC

UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | | |
|---|---|---|
| AXIS CAPITAL MANAGEMENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | |
| | § | Case No. _____ |
| | § | |
| | § | |
| LIMITLESS ASSET MANAGEMENT, LLC; | § | |
| LIMITLESS ASSET MANAGEMENT, LLC; | § | |
| JOHN WILSON; GERARDO CORONA | § | |
| BALCAZAR; EVAN SANCHEZ; JOSE RAMOS; | § | |
| WESTAR DEVELOPMENT CORP; BURL | § | |
| SHEPPARD; and MICHAEL GALARZA | § | |
| | § | |
| Defendants' | § | |

I.
JURISDICTION AND VENUE

1.    This court has subject matter jurisdiction over this action under 18 U.S.C. § 1964.

This Court has original subject-matter jurisdiction under 18 U.S.C. § 1964(c) and 28 U.S.C. §

1

1331 because it presents a question arising under the laws of the United States. 28 U.S.C. §§ 1331 and 1337. Specifically, this action arises in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

2.      Additionally, this court has supplemental jurisdiction over all other claims in this matter under 28 U.S.C. § 1367(a). All claims for which the district courts do not have original jurisdiction are so related to the claims for which it does have original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in the judicial district under 28 U.S.C. § 1391, as Defendants are subject to personal jurisdiction in this judicial district under 18 U.S.C. § 1965 and process may be served "in any district of the United States".

4.      Additionally, venue is proper under 18 U.S.C. § 1965 (b) because in any action brought under the Federal RICO statute in a U.S. District Court, the Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it. Here, the ends of justice require this Court's exercise of personal jurisdiction over all Defendants.

5.      Along with the acts alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, electronic transfers of money and information and the United States mail.

6.      Defendants operated as an enterprise within the meaning of 18 U.S.C. § 1964(4) that operates in interstate commerce and the activities of which affect interstate commerce.

## II.
## PARTIES

7.      That at all times herein mentioned Plaintiff Axis Capital Management, Inc. ("AXIS"), operated and is a resident of the State of Wyoming.

2

8.      That at all times herein mentioned Defendant Limitless Asset Management, LLC, ("LAM") was, and is, a limited liability company operating and registered under the same name in both Texas, at 5900 Balcones Dr., Ste 100, Austin, Texas 78735 and Florida, at 5804 NW 199th Street, Hialeah, Florida, 33015.

9.      That at all times herein mentioned, Defendant John Wilson ("WILSON") located in both Star Island, Florida and Guadalajara Mexico was the authorized agent and decision maker for LAM.

10.     That at all times herein mentioned, Defendants Evan Sanchez and Jose Ramos, ("BROKERS") residents of Texas and Mexico, acted as the authorized agents of LAM.

11.     That at all times herein mentioned, Defendant Gerardo Corona Balcazar, ("BALCAZAR") resident of Texas and Mexico, acted as the authorized agent of LAM.

12.     That at all times herein mentioned, Defendant WESTAR Development Corp., a Nevada corporation ("WESTAR"), operating through defendant Burl Sheppard ("BURL") operated as both a broker and partner of LAM.

13.     That at all times herein mentioned, Defendant Michael Galarza ("GALARZA"), who owns residences in North Carolina, New York, and Florida, operated, including through his company NNG Agency, Inc., a Wyoming Corporation, as a broker for LAM.

14.     That at all times herein mentioned, LAM, WILSON, and BROKERS made dozens of representations that White House consultant, Steven Norton, is a partner and decision maker for LAM.

## III.
## <u>BACKGROUND</u>

15.     After much negotiations between Axis, on the one hand and the BROKERS, BALCAZAR, BURL, and WESTAR on the other hand, a written contract between LAM and

AXIS was reached on February 11, 2026. A true and correct copy of the contract is attached hereto as "Exhibit A".

16.   The Digital Asset Purchase And Strategic Representation Agreement ("Agreement") essentially required AXIS to liquidate approximately 39,704 BTC on behalf of LAM at a discounted price of 80% of the market rate of sale. The Agreement required, for the first transaction only, for AXIS to "buy" 25 BTC from LAM. LAM would then send 30 BTC to AXIS (the difference representing the discount) as the first tranche transaction. The remaining BTC would be liquidated and paid to LAM in arrears after sale and in accordance with the terms and schedule of the Agreement.

17.   In reliance thereon, AXIS paid for the 25 BTC, in USDT as requested by LAM. AXIS sent $1,150,000.00 on February 12, 2026 and $469,876.68 on February 17, 2026. WESTAR and BURL vouched for LAM.

18.   LAM increased its credibility by providing correspondence by its CEO, Steve Norton, a White House consultant. A true and correct copy of such correspondence is attached hereto as "Exhibit B"

19.   LAM never sent the 30 BTC or any BTC.

20.   Over the several days following, with daily promises of compliance with the Agreement by LAM, BROKERS, BURL & WILSON, LAM made one excuse after another not to comply. As a "mark up", LAM sweetened the pot and entered into an addendum to the Agreement dated February 21, 2026 ("Addendum"). A true and correct copy of is attached hereto as "Exhibit C".

21.   The Addendum inter alia, increases the BTC to 45,700, increases the daily sale of BTC to 1,200, increases the discount for the benefit of AXIS and reduces the amount to be paid

4

to BURL and WESTAR, required LAM to return the amount of $1,619,876.68 if LAM was unable to transfer the 30 BTC by 5:PM EST on February 24, 2026 and still continue performance of the Agreement. The total value of the Agreement and the Addendum was close to $3,500,000,000.00.

22.     Then more excuses, no BTC. See Exhibit "D".

23.     Daily, sometimes multiple daily excuses followed. Finally, Howie Ehrlich of AXIS and WILSON have a heated argument conversation. WILSON then refuses to talk to Ehrlich further. GALARZA then stepped in to negotiate a deal for himself as the "US LAM Ambassador" for significant payment. GALARZA would then take control of the LAM BTC wallet for AXIS and doll out BTC to AXIS pursuant to the Agreement & Addendum.

24.     As GALARZA, BROKERS, WILSON, AND LAM continued their internal negotiations, all such parties continued to make daily excuses as to why AXIS has received no BTC. Excuses were, inter alia, insurance problems, technical issues, government intervention, White House stalls, police action, death of WILSON's daughter, etc. Constant meetings in Mexico, Florida, Washington D.C., Maryland, Raleigh North Carolina, and Texas were made and either moved last minute or no show by the Defendants.

25.     In or around mid May 2026, LAM, BROKERS, and WILSON, now demanded an additional $2,000,000.00 from AXIS in exchange for 100 BTC to transact or it would not move forward and not send the original BTC. If Axis did send another $2,000,000.00 however, LAM would change the wallet assigned to AXIS (apparently, according to LAM, that wallet was hacked and corrupted) to a wallet containing approximately 91,000 BTC.

26. Plaintiff is informed and believes that neither WILSON, NORTON, BALCAZAR or LAM, had or have, control over any of the wallets in the Agreement, Addendum or as otherwise promised.

27. As of filing of this suit, WILSON, BROKERS, & LAM continue to refuse to return funds, provide BTC, provide control of any BTC wallet, blame lack of movement on these parties, such as Steve Norton, refuse to meet, refuse to provide control or ownership of any BTC wallet, or comply with any terms of the Agreement, Addendum or modifications thereto. WESTAR and BURL refuse to even communicate further.

## IV.
## FIRST CAUSE OF ACTION AGAINST DEFENDANTS LAM, WILSON and BALCAZAR FOR BREACH OF CONTRACT

28. Plaintiff refers to paragraphs 1 through 27 inclusive, and incorporates those paragraphs by reference as though set forth in haec verba.

29. Plaintiff and LAM, WILSON, and BALCAZAR, entered into a written agreement as evidenced by Exhibit "A", modified by Exhibit "C" to Plaintiff's complaint pursuant to which Plaintiff would purchase well over $3,000,000,000.00 in BTC at a discount.

30. Plaintiff has performed all conditions, covenants and promises required by it on its part to be performed in accordance with the terms and conditions of the written agreement, except for those conditions, covenants and promises which have been excused by defendants' breach of agreement.

31. Defendants have continually breached their agreement by failing and refusing to comply with its terms.

6

32.     As a proximate result of the breach by defendants as herein alleged, Plaintiff has suffered damages in the sum of at least $800,000,000.00, plus interest at the legal rate from February 21, 2026, for a total sum to be shown at time of trial.

V.

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS EXCEPT GALARZA
FOR COMMON LAW FRAUD

33.     Plaintiff refers to paragraphs 1 through 32 inclusive, and incorporates those paragraphs by reference as if set forth in haec verba.

34.     Defendants made the following written and oral representations and promises to Plaintiff: The Agreement essentially required AXIS to liquidate approximately 39,704 BTC on behalf of LAM at a discounted price of 80% of the market rate of sale. The Agreement required, for the first transaction only, for AXIS to "buy" 25 BTC from LAM. LAM would then send 30 BTC to AXIS (the difference representing the discount) as the first tranche transactions. The remaining BTC would be liquidated and paid for in arrears after sale, in accordance with the terms and schedule of the Agreement.

35.     In reliance thereon, AXIS paid for the 25 BTC, in USDT as requested by LAM. AXIS sent $1,150,000.00 on February 12, 2026 and $469,876.68 on February 17, 2026. WESTAR and BURL vouched for LAM.

36.     LAM never sent the 30 BTC or any BTC.

37.     Over the several days following, with daily promises of compliance with the Agreement by LAM, BROKERS, BURL & WILSON, LAM made one excuse after another not to comply. As a "mark up", LAM sweetened the pot and entered into an addendum to the Agreement dated February 21, 2026.

7

38. The Addendum inter alia, increases the BTC to 45,700, increases the daily sale of BTC to 1,200, increases the discount for the benefit of AXIS and reduces the amount to be paid to BURL and WESTAR. The total value of the Agreement was close to $3,500,000,000.00.

39. Defendants made those representations and promises for the purpose of inducing plaintiff into paying approximately $1,700,000.00 to them. Plaintiff relied upon the promises made by defendants, made the payments and spent time and money to continually ramp up for BTC sale, transfer and other incentives.

40. Defendants, despite their representations to the contrary, never, at any time, intended to comply with those representations, as evidenced by their consistent refusal to do so, and made the representations with the intent to defraud plaintiff. Plaintiff unaware of Defendants' intention not to perform pursuant to representations and promises, relied upon those promises and paid approximately $1,700,000.00. Under the circumstances, plaintiff reliance on the promise of defendants as herein alleged was reasonable.

41. As a proximate result of the aforementioned wrongful conduct of defendants, and each of them, plaintiff has suffered damages in excess of the jurisdictional limits of this court, in a sum to be shown at the time of trial.

42. As a further proximate result of the aforementioned, wrongful conduct of the above-named defendants, and each of them, Plaintiff has suffered investigator fees, and other incidental damages and out of pocket expenses, all to Plaintiff's general damages in a sum to be shown at time of trial.

43. Defendants' conduct described herein was done with a conscious disregard of Plaintiff's rights and with the intent to vex, injure or annoy plaintiff such as to constitute

oppression, fraud or malice, entitling plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## VI.
### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 18 U.S.C. 1964 (RICO)

44.    Plaintiff refers to paragraphs 1 through 43 inclusive, and incorporates those paragraphs by reference as if set forth in haec verba.

45.    All Defendants violated 18 U.S.C. § 1962(c), injuring Plaintiff and giving rise to liability under 18 U.S.C. § 1964(c).

46.    Under 18 U.S.C. § 1964(c):

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

47.    18 U.S.C. § 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection of unlawful debt.

48.    Defendants are each a "person" within the meaning of 18 U.S.C. § 1961(3).

49.    The Defendants together formed an association-in-fact (along with being separate legal enterprises) for the common and continuing purpose of defrauding Plaintiff. This constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4). The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the culpable individuals. The Defendants, together, directed the enterprise by

9

fraudulently facilitating payment of approximately $1,700,000.00 by Plaintiff, in addition to other fraudulent acts meant to conceal the illegal activity, such as the creation and transmission of fraudulent documents.

50.     The enterprise engaged in and affected interstate commerce, Plaintiff AXIS is a legal entity formed under the laws of the State of Wyoming and its principal office based in California. Defendants utilized e-mail, WhatsApp, text, phone, and other forms of correspondence in addition to wiring funds, across state and international borders.

51.     The Defendants, each a distinct person associated with the enterprise, did conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).

52.     Predicate acts of racketeering activity are acts that are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged above and below. The Defendants committed multiple acts or aided and abetted the acts committed by other members of the enterprise.

    a.  Defendants committed laundering of monetary instruments on multiple occasions by transporting, transmitting, or transferring monetary funds from a place in the United States to or through a place outside the United States with the intent to promote the carrying on a specified unlawful activity. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956(a)(2)(A) (laundering of monetary instruments).

    b.  Defendants committed identification fraud on multiple occasions by knowingly providing false identification documents and information in furtherance of the fraudulent scheme. Defendants committed acts constituting indictable offenses

under 18 U.S.C. § 1028(a) (fraud and related activity in connection with

identification documents, authentication features, and information).

c.  Defendants committed mail fraud on multiple occasions by facilitating fraudulent

transfers of funds from Plaintiff through the use of mail communications.

Defendants committed acts constituting indictable offenses under 18 U.S.C. §

1341 (mail fraud).

d.  Defendants committed wire fraud on multiple occasions by facilitating fraudulent

transfer of funds from Plaintiff. Defendants committed act constitution indictable

offenses under 18 U.S.C. § 1343 (wire fraud).

53.     Defendants also committed acts constituting the aiding and abetting of offenses

under 18 U.S.C. §§ 1956 (laundering of monetary instruments), 1028 (fraud and related activity

in connection with identification documents), 1343 (wire fraud), and 1341 (Mail fraud)

54.     The acts of racketeering were not isolated. Rather, they were related in that they

had the same or similar purpose and result, participants, victims, and method of commission.

Further, the acts of racketeering by the Defendants were continuous, with repeated conduct

during a period beginning in September 2025 and continuing to today. There is a continued

threat of repetition of such conduct, as Defendants' scheme is their regular manner of conducting

operations.

55.     Defendants participated in the management and operation of the association-in-

fact enterprise by managing, facilitating, and committing multiple acts of racketeering as

described above and below.

56.     The Defendants' unlawful actions proximately caused and continue to cause

injuries to Plaintiff under 18 U.S.C. § 1964(c). Specifically, the Defendants' violations of these

statutes resulted in Plaintiff's loss of nearly $1,700,000.00 related to payments made, as well as thousands in legal and travel expenses and hundreds of millions in lost revenues. Furthermore, Plaintiff would not have entered into any transaction with Defendants if it had knowledge of the Defendants' plan to defraud.

57.    Plaintiff accordingly seeks an award of three times the damages it sustained based on the amount due to Plaintiff under the applicable agreements, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## VII.
## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 18 U.S.C. 1962(D) (RICO)

58.    Plaintiff refers to paragraphs 1 through 58 inclusive, and incorporates those paragraphs by reference as if set forth in haec verba.

59.    Each Defendant violated RICO and Plaintiff was injured as a result.

60.    All Defendants violated 18 U.S.C. § 1962(d), injuring Plaintiff and giving rise to liability under 18 U.S.C. § 1964(c).

61.    Under 18 U.S.C. § 1964(c).

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

62.    18 U.S.C. § 1962(d) provides as follows:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a),(b), or (c) of this section.

63.     Defendants conspire to violate 18 U.S.C. § 1962(c) and thus violated 18 U.S.C. § 1962(d).

64.     The United States Supreme Court has stated that "[t]here is no requirement of some overt act or specific act" in the RICO conspiracy provision, thus making this provision "even more comprehensive then the general conspiracy offense." See *Salinas v. United States*, 522 U.S. 52, 63 (1997).

65.     Additionally, "a conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Id*.

66.     As set forth above, the Defendants conspired to conduct or participate, directly or indirectly, in a pattern of racketeering activity. The Defendants, together, directed the enterprise to fraudulently facilitate the payment of over $1,700,000.00 by Plaintiffs, in addition to directing other fraudulent acts meant to conceal the illegal activity, such as the creation and transmission of fraudulent documents.

67.     Therefore, at a minimum, the Defendant conspired to violate 18 U.S.C. § 1962(c), and in doing so violated 18 U.S.C. § 1962(d).

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as follows:

1. General damages in the sum to be shown at time of trial;

2. Special damages in a sum to be shown at time of trial, plus interest from February 21, 2026;

3. Incidental damages in an amount to be shown at time of trial;

13

4.  Punitive and exemplary damages in an amount appropriate to punish or set an example of defendants, as to those causes of action which allege punitive damages;

5.  Treble Damages for RICO;

6.  Attorneys' fees;

7.  For costs of suit incurred herein; and

8.  Such other and further relief as the court may deem just and proper.

Respectfully submitted,

*/s/ Andrew D. Bailey*
Andrew Bailey (WSB #(WSB # 7-6112 )
Bailey/Stock/Harmon/Cottam/Lopez LLP
6234 Yellowstone Road
Cheyenne WY 82009
T: (307) 7638-7745
Andy@Performance-Law.com

Respectfully submitted,

*/s/ Jeff Katofsky*

Jeff Katofsky, Esq. (CA SBN # 138773, pro hac vice pending)
KATOFSKY LAW
4558 Sherman Oaks Ave.
Sherman Oaks, CA 91403
T: 818-990-1475
F: 818-990-1477
jeff@katofskylaw.com
*Attorney for Plaintiff*

14

15